## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

BEULAH PARKER,

*Plaintiff,*

v.                                                            Civil Action No. 07-5687 (KSH)

PRESSLER & PRESSLER, LLP;
PALISADES COLLECTION, LLC;                                    **OPINION**
GERARD FELT,

*Defendants.*

**Katharine S. Hayden, U.S.D.J.**

### I.    INTRODUCTION

This action arises under the Fair Debt Collection Practice Act ("FDCPA"), 15 U.S.C. §

1692a, *et seq.*[1]  Plaintiff Beulah Parker, a New Jersey resident, filed a complaint [D.E. # 1] on

November 21, 2007 against:  (1) Pressler & Pressler, LLP ("P&P"), a New Jersey law firm

specializing in debt collection representation and a debt collector as defined under 15 U.S.C. §

1692a(6); (2) New Jersey-based Palisades Collection, LLC ("Palisades"), also a debt collector as

defined under 15 U.S.C. § 1692a(6) (and a client of P&P); and (3) Gerard Felt, an attorney for

P&P.  Compl. ¶¶ 3-6, 8.  Parker alleges violations of the FDCPA and also asserts state law

claims for equitable and legal fraud and intentional infliction of emotional distress.

Defendants now move for summary judgment, arguing, *inter alia*, that Parker's FDCPA

claim is time-barred by the applicable one-year statute of limitations.  Significantly, Parker

---

[1] The Court has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 1692k(d).
It has supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

admits that the statute of limitations has run as to the vast majority of defendants' potentially actionable conduct, but argues that the doctrine of equitable tolling operates to permit the case to proceed. Parker fails to establish a basis for this extraordinary remedy, as will be discussed below. Moreover, to the extent that any of Parker's claims are timely, the Court finds that Parker's evidence is insufficient for her federal claim to withstand summary judgment on the merits. Accordingly, the Court will grant defendants' motion for summary judgment on that claim. The Court denies defendants' motion for fees under the FDCPA as well. Finally, the Court declines to exercise continuing supplemental jurisdiction over Parker's state law claims, and dismisses those counts of the complaint without prejudice.[2]

## II.    STANDARD OF REVIEW

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the facts in the light most favorable to Parker, the non-moving party, and must accordingly draw all reasonable inferences that support her claims. *See Gray v. York Newspapers*, 957 F.2d 1070, 1078 (3d Cir. 1992). The Court is not permitted to weigh evidence or make credibility determinations, *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998), and may not grant defendants' motion if there is evidence sufficient to allow a reasonable jury to return a verdict for Parker, or if the

---

[2] Parker's complaint alleges six counts, numbered One, Two, Three, Four, Six, and Seven. Compl. ¶¶ 19-71. Counts Six and Seven are non-substantive counts directed only at the distribution of liability to the individual defendant based on a participation theory, and to the corporate defendants based on a *respondeat superior* theory. Compl. ¶¶ 56-71. Because the Court dismisses the four substantive counts, it need not discuss the two distributive counts, and dismisses them as well.

factual dispute is one "that might affect the outcome of the suit under the governing law . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Defendants' burden, however, "may be discharged by 'showing' . . . that there is an absence of evidence to support the non-moving party's case."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  In opposing the motion, Parker may not rest upon mere allegations or denials, nor may she defeat the motion by presenting a mere scintilla of evidence in support of her position; instead, she must, "by affidavits or as otherwise provided in [Rule 56]," set forth "specific facts showing that there is a genuine issue for trial."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Anderson*, 477 U.S. at 248, 252.

## III.    FACTS & PROCEDURAL HISTORY[3]

At all times relevant here, Parker resided at 22 Crestwood Circle, Budd Lake, New Jersey, 07828-2536.  In late 2005, defendants assert that Palisades acquired a portfolio of defaulted accounts from AT&T Wireless, which included an account bearing Parker's name and social security number.  Def. Facts ¶ 4.  In late January or early February 2006, Parker received correspondence from Palisades regarding this account.  Compl. ¶ 10; Def. Facts ¶ 5; Pl. Facts ¶ 5.  Neither party has submitted the exact dunning letter sent to Parker, but an exemplar of

---

[3] Facts stated herein are taken from the complaint, defendants' L. Civ. R. 56.1 Statement of Material Facts ("Def. Facts"), Parker's L. Civ. R. 56.1 Counter-Statement of Material Facts ("Pl. Facts"), her statement of supplemental contested facts ("Pl. Supp. Facts"), and all exhibits submitted in support thereof.  On several occasions, Parker does not directly dispute a proposition put forth by defendants' statement of facts, instead purporting to "dispute" some issue of tangential relevance.  To the extent that is the case, the Court deems admitted any statement of fact not squarely refuted by Parker's responsive statement.  *See* L. Civ. R. 56.1 and Cmt. (d); *Hill v. Algor*, 85 F. Supp. 2d 391, 408 n.26 (D.N.J. 2000) ("Under L. Civ. R. 56.1, facts submitted in the statement of material facts which remain uncontested by the opposing party are deemed admitted.").

Palisades' standard "introduction letter" is attached as Exhibit A to the Affidavit of Andrew K.

De Heer ("De Heer Aff."), submitted in opposition to defendants' motion. The exemplar reads

in pertinent part:

> Please be advised that your account has been sold to Palisades
> Collection, L.L.C.   You are directed to address all future
> correspondence and payments concerning this account to this
> address:

> Palisades Collection, L.L.C.
> PO Box 1244
> Englewood Cliffs, NJ 07632

> When permitted by law, we may report information about your
> account to credit bureaus.  Consequently, late payments, missed
> payments, or other defaults on your account may be reflected in
> your credit report. . . .

> This is an attempt to collect a debt, and any information obtained
> will be used for that purpose.  Unless you notify this office within
> 30 days after receiving this notice that you dispute the validity of
> the debt or any portion thereof, this office will assume this debt is
> valid.  If you notify this office in writing within 30 days from
> receiving this notice, this office will obtain verification of the debt
> or obtain a copy of a judgment and mail you a copy of such
> verification or judgment.  If you notify this office in writing after
> receiving this notice, this office will provide you with the name
> and address of the original creditor, if different from the current
> creditor.  All dispute correspondence should be mailed to 87 S
> Commerce Way suite 700, Bethlehem, PA 18017.

De Heer Aff. Ex. A.  Parker alleges that, upon receipt of this correspondence, "she soon

thereafter dispatched [it] back to Palisades Collection with a handwritten request for verification

embossed on it."  Pl. Facts ¶ 6.  Defendants aver that "Palisades' records reveal no written

response [from Parker] to that correspondence."  Def. Facts ¶ 6; Affidavit of Monica Bey ("Bey

Aff.") ¶ 9.  Parker has not proffered her alleged verification request, and it does not appear in the

record.  Parker did not speak with anyone at Palisades.  Def. Facts ¶¶ 7-8; Affidavit of Mitchell

Williamson ("Williamson Aff.") Ex. 5, at 147:5-12.

In early June 2006, Palisades placed Parker's account for collection with its counsel,

P&P.  Def. Facts ¶ 9.  Thereafter, P&P sent Parker via regular mail an initial notice letter, dated

June 8, 2006, which showed a balance due of $1,545.99.[4]  Def. Facts ¶ 10; Affidavit of Steven P.

McCabe ("McCabe Aff.") Ex. A.  Parker disputes that she received this notice; she asserts that

all P&P mailings to her address contained a nine-digit ZIP code without a hyphen between the

fifth and sixth digits, per U.S. Postal Service regulations.  Pl. Facts ¶ 10.  In any event, P&P did

not receive a response from Parker to the initial notice letter.  Def. Facts ¶ 10.

On August 5, 2006, P&P filed a complaint on behalf of Palisades against Parker in New

Jersey Superior Court, Morris County, Law Division, Special Civil Part (the "state action").  Def.

Facts ¶ 11; Pl. Facts ¶ 11.  Service was effected by the court on August 9, 2006 pursuant to N.J.

Court Rule 6:2-3(d)(1).  Def. Facts ¶ 12; McCabe Aff. ¶ 4, Ex. R; Pl. Facts ¶ 12.

On August 15, 2006, Parker twice called P&P regarding the state action pending against

her; the record contains transcripts of each conversation, which the firm recorded.  Def. Facts ¶

14.  Her first phone conversation was with paralegal Maranda Felton.  She told Felton that

"Palisades has sent me a letter and 4 months ago I responded saying that I dispute the validity of

the debt, and now I get something from Court that I am being summoned?"  McCabe Aff. Ex. S.

After Felton obtained confirming information from Parker, the conversation continued in

relevant part:

---

[4] In subsequent documents, the alleged account balance increased due to interest and late fees.
The Court does not hereafter cite each updated balance.

Felton:     You said you sent Palisades a letter saying that you dispute the debt?

Parker:     Yes. Four months ago.

Felton:     Four months ago. Ok. Do you still have that letter you wrote?

Parker:     I'll have to look for it.

Felton:     Ok and what's the reason why you're disputing the bill?

Parker:     Because I don't know what it is for.

Felton:     It's for an AT&T bill. It's a wireless bill.

Parker:     How can I owe $1600 on a wireless bill?

Felton:     Ok. The account was opened back on January 22, 2002, and the last time you made a payment was November 12, 2003 so you have 3 years that have lapsed.

Parker:     Three years?  How can I be charged for [three] years if the account is closed?

Felton:     Because if you didn't pay the bill, there's interest and late fees.  The last time you made a payment was in November 2003.

Parker:     Then the account was closed so why am I being charged up to now?

Felton:     But you still owe the money on the account.

Parker:     It's not $1600. I disputed the amount back then.

Felton:     Ok. Well then what you can do is just follow the Summons and Complaint. I'll put a notation in here that you're disputing the balance.

Parker:     So why am I being . . . why don't you send me the proof of how much you served me for?

6

Felton:      You have it in front of you, Madam, the Summons and Complaint. You just said you received that. It gives you a breakdown right on the sheet – the demand amount, attorney[']s fees.

Parker:      No. It's got to be a letter. If you send me a letter and I respond . . . if they sent me a letter and I respond . . .

Felton:      Madam, you have the letter in front of you[,] the Summons and Complaint. You just have to read it–

Parker:      It shouldn't have gone this far. That's what I'm saying.

Felton:      Madam, there's no reason for you to yell at me either. Well you need to follow the instructions on the Summons and Complaint.

* * *

Parker:      You know what. I'm gonna call Palisades.

Felton:      Madam. They're only going to refer you back to us.

Parker:      But you're telling me I should just follow the Summons. I want proof that this is what I owe because I responded back then and they never gave me any proof that I owe $1600 and now you're suing me for it.

Felton:      Ok. But if you're saying that Palisades, if you wrote to Palisades 4 months ago, the balance wasn't even $1600 back then. You are in court right now. When I got this account on June 6, 2006, the balance was $1549.99. OK. Yeah, you do see $1600 because you have been sued on the account. Hold on one second. Beulah, how much do you think you owe?

Parker:      I think I owe about $700.

Felton:      You think you owe $700? All right, well, what I can do is I'll offer you a settlement, but it's not going to be for $700. Hold on one second. I can offer you a settlement of $1445.00.

7

| | |
|---|---|
| Parker: | No. I don't owe that much. |
| Felton: | Ok. Then what I'll do is I'll note the file. |
| Parker: | You can't settle for less than that? |
| Felton: | No Madam. |
| Parker: | Ok. Then I'll send my response to Court then. |
| Felton: | Ok. You have a good day. |

****

*Id.*

About twenty minutes later, Parker called back and spoke this time to David Budd, another paralegal. After Budd confirmed Parker's personal information and informed her that he was a paralegal attempting to collect a debt, the following exchange occurred:

| | |
|---|---|
| Parker: | I need to know what phone number this account was on. |
| Budd: | One second. Can you hold on for one second? Ok Madam. Palisades Collection is currently the owner of this debt and didn't forward us that information. We will put in a request to them for that information. But I have to advise you that's going to take upwards . . . it could take anywhere up to 120 days for us to get that. |
| Parker: | Ok. So you don't know what I am being sued for and you are suing me? |
| Budd: | We know what the account number is. |
| Parker: | Now . . . you can't give me the information so I need to speak to somebody who can. |
| Budd: | They're going to refer you to us. We're their legal counsel. We will make the request for the information. |

8

Parker:     Ok.  I need to know what number it is for and how they came up with that $1600.

Budd:       The $1600 is due to the fact that this account hasn't been paid.

Parker:     I need a breakdown of everything.

Budd:       You're not going to get a breakdown of everything.

Parker:     Why not?

Budd:       Because you haven't paid this since 2003.

Parker:     Because I don't owe that amount.

Budd:       Ok.  Well you didn't pay since 2003.  It's 2006.  It's legal fees and late charges.

                                    ***

Parker:     How can I be charged for 2 years when the account is closed?

Budd:       Ok.  When you don't pay your account, you get late fees and charge-off fees.  When you used the phone in the first place, you agreed to all of that.

Parker:     No I did not.

Budd:       You did by signing the customer agreement and by using the phone, you agreed to all of that.  It's in the customer agreement.   When you don't pay your phone, there are late fees and there are charges and interest on the late fees when you don't pay for it.

Parker:     Can I have the phone number for which I am being sued?

Budd:       Ok. We will make that request to our client.

                                    ****

McCabe Aff. Ex. T.

Proceeding *pro se*, Parker filed an answer and motion to dismiss the state action on September 19, 2006 (the motion was dated September 18, 2006).  Def. Facts ¶ 26; McCabe Aff. ¶ 9. Ex. B; Pl. Facts ¶ 26.  In her motion, she listed 15 bases for dismissal, asserting, *inter alia*: "I do not owe the plaintiff any money nor anything else"; "I have absolutely no obligation whatsoever to the plaintiff"; "I am denying their claim and all of their allegations"; "The plaintiff's claim is baseless, frivolous and completely without merit"; "The plaintiff has not stated a claim on which relief can be granted"; and "The plaintiff has failed to produce a copy of a contract, written agreement or other proof of agreement."  McCabe Aff. Ex. B.

On October 3, 2006, P&P sent interrogatories by  regular and certified mail, addressed to Parker at 22 Crestwood Circle, Budd Lake, NJ 078282536.  Def. Facts ¶ 28; McCabe Aff. ¶ 10, Ex. C.  The certified mail was returned as "unclaimed" on November 10, 2006.  McCabe Aff. Ex. C.  The regular mail was not returned.  Def. Facts ¶ 28.  Parker disputes that she received these interrogatories, asserting that "[r]eturned envelopes provided by defendants show the same defective nine (9) digit zip code [as all of P&P's mailings].  Plaintiff has consistently stated that she did not receive this mail from [P&P]."  Pl. Facts ¶ 28.[5]

On November 3, 2006, P&P sent a "ten-day" letter to Parker via regular mail, advising her that if the interrogatory responses were not received within ten days, P&P would file an appropriate motion.  Def. Facts ¶ 29; McCabe Aff. Ex. D.  Parker disputes that she received this letter.  Pl. Facts ¶ 29.  When Parker did not respond to the ten-day letter, P&P filed a motion on

---

[5] On several occasions, in support of her assertion that she "has consistently stated that she did not receive this mail from [P&P]," (including this one) Parker cites her deposition.  *See, e.g.*, Pl. Facts ¶ 29 (citing De Heer Aff. Ex. C, at 510:20-511:9).  The cited language, however, came not from Parker's mouth, but from her attorney's (who represents her in this action, *see infra*).  Obviously, the Court will not consider this as Parker's testimony.

10

November 15, 2006 to strike Parker's pleadings for failure to respond to the interrogatories. Def. Facts ¶ 33; McCabe Aff. Ex. E. P&P sent a notice of motion via certified and regular mail to Parker at 22 Crestwood Circle, Budd Lake, NJ 078282536. McCabe Aff. Ex. E. The certified mail was returned as "unclaimed," but the regular mail was not returned. Def. Facts ¶ 33; McCabe Aff. Ex. E. Parker asserts that she did not receive the motion to strike because the unhyphenated zip code was not in compliance with U.S. Postal Service regulations. Pl. Facts ¶ 33.

When Parker did not respond to the motion to strike, the Special Civil Part entered an order on November 27, 2006 striking her answer without prejudice. Def. Facts ¶ 34; McCabe Aff. Ex. F. The order specifically stated that if Parker formally moved to vacate the order within thirty days of service, the court would vacate it "provided fully responsive answers to the propounded [i]nterrogatories are presented . . . ." McCabe Aff. Ex. F. P&P sent the court's order to Parker—again via certified and regular mail—at her address (with the unhyphenated zip code). Def. Facts ¶ 35; McCabe Aff. Ex. F. The certified mail was returned as "unclaimed," but the regular mail was not returned. Def. Facts ¶ 35; McCabe Aff. Ex. F. Based on the zip code, Parker again disputes that she received the suppression order. Pl. Facts ¶ 35.

On February 22, 2007, pursuant to New Jersey Court Rule 4:23-5(a), P&P sent Parker—via certified and regular mail—a notice to *pro se* party and a notice of motion to suppress Parker's pleadings with prejudice and to enter judgment. Def. Facts ¶ 37; McCabe Aff. Ex. G. The certified mail was returned as "unclaimed," but the regular mail was not returned. McCabe Aff. Ex. G. Parker disputes that she received the motion. Pl. Facts ¶ 37.

On May 18, 2007, P&P sent Parker—via certified and regular mail—a notice of entry of judgment. Def. Facts ¶ 39; McCabe Aff. Ex. H. The certified mail was returned "unclaimed,"

but the regular mail was not returned. McCabe Aff. Ex. H; Def. Facts ¶ 39. Parker denies that she received the notice that the Special Civil Part had entered judgment. Pl. Facts ¶ 39. On June 12, 2007, P&P sent Parker—via certified and regular mail—an information subpoena related to the judgment. Def. Facts ¶ 41; McCabe Aff. Ex. I. The certified mail was again returned as "unclaimed," but the regular mail was not returned. Def. Facts ¶ 41; McCabe Aff. Ex. I. Parker disputes that she received the subpoena. Pl. Facts ¶ 41.

Despite allegedly not having received any of the above mailings, Parker filed a motion on June 28, 2007 to vacate the default judgment entered in the Special Civil Part. Def. Facts ¶ 42; McCabe Aff. Ex. J. On the form certification in support of her motion, Parker cited four grounds for vacating the default judgment: (1) "The plaintiff has not presented a proper bill of complaint, and has not been able to provide me details of such debt, such as the phone number of the account"; (2) "The plaintiff has failed to establish an accrual date for anything"; (3) "The plaintiff has failed to produce a copy of a contract, written agreement, or other proof of agreement"; and (4) The plaintiff's claim is baseless, and completely without merit." McCabe Aff. Ex. J. Defendants assert that Parker attached no other documents (specifically, the completed information subpoena) to her motion papers. Def. Facts ¶ 42; McCabe Aff. ¶ 17. Parker, on the other hand, avers that she did indeed file the completed subpoena along with her motion to vacate, and submits a copy reflecting the date of June 28, 2007. Pl. Facts ¶ 42; De Heer Aff. Ex. T. Whatever the case, the Special Civil Part denied Parker's motion on August 15, 2007, stating that her "application to vacate the default judgment is not adequate as it fails to establish any basis for relief under Rule 4:50-1, *et seq*, good cause has not been shown." McCabe Aff. Ex. L. P&P sent Parker—via certified and regular mail—a copy of the court's order denying the motion. Def. Facts ¶ 47; McCabe Aff. Ex. L. The certified mail was returned

as "unclaimed," but the regular mail was not returned.  Def. Facts ¶ 47; McCabe Aff. Ex. L.

Parker denies that she received the mailing.  Pl. Facts ¶ 47.

On August 20, 2007 (two days before the court denied Parker's motion to vacate), P&P

filed a motion to enforce litigant's rights based on her failure to respond to the information

subpoena.  Def. Facts ¶ 46; McCabe Aff. Ex. M.  P&P sent the motion—via certified and regular

mail—to Parker; the certified mail was eventually returned as "unclaimed," but the regular mail

was not returned.  Def. Facts ¶ 46; McCabe Aff. Ex. K.  Parker disputes that she received the

mailing.  Pl. Facts ¶ 46.  The Special Civil Part granted the motion on October 30, 2007.

McCabe Aff. Ex. M.  The order to enforce litigant's rights stated the following, in pertinent part:

> (1) [Parker] has violated plaintiff's rights as a litigant; (2) [Parker]
> shall immediately furnish answers as required by the information
> subpoena[; and] (3) If [Parker] fails to comply with the information
> subpoena within ten (10) days of the certified date of mailing of
> this order, a warrant for [Parker's] arrest shall issue out of this
> Court; without further notice.

*Id.*  Also on the order appear the following handwritten words: "No opposition," below Parker's

address; and "<u>further ordered</u>, party in receipt of this order to serve all parties within 7 days." *Id.*

(underline in original).  P&P sent the court's order to Parker on November 6, 2007—via regular

and certified mail.  Def. Facts ¶ 49.  The certified mail was returned as "unclaimed," but the

regular mail was not returned.  *Id.*; McCabe Aff. Ex. M.  Parker asserts that she did not receive

the mailing from P&P.  Pl. Facts ¶ 49.

On October 27, 2007 (three days before the court issued the order to enforce litigant's

rights), a writ of execution against goods and chattels was forwarded to New Jersey Superior

Court, Morris County, Law Division, Special Civil Part, requesting a bank levy upon at Trustco

Bank, located at 385 N. Franklin, Tpk, Ramsey, NJ 07446.  Def. Facts ¶ 53; McCabe Aff. Ex. O.

Because that bank is actually located in Bergen County, the Special Civil Part in Morris County forwarded the writ to its counterpart there, where it was assigned to Court Officer Gerald Ramoth. Def. Facts ¶ 54; Affidavit of Gerald V. Ramoth ("Ramoth Aff.") ¶¶ 2-3, Exs. B, C.

On November 14, 2007, Parker responded to P&P regarding the October 30, 2007 order to enforce litigant's rights by facsimile with the following:

> I received a copy of the Order to Enforce Litigant's Rights suggesting that I failed to comply with the information subpoena. Please check your records since I furnished you with the answers together with my appeal to vacate default judgment and filed a copy at the Morris County Civil Court on June 28, 2007.
>
> I do not know what you want from me.  You and Palisades Collection have unjustly obtained judgment against me at the Morris County Civil Court, you are wrongfully accusing me of not complying with [an] information subpoena to get me arrested, and you have sought a levy upon my goods and chattels from the Bergen County Civil Court.  I am unemployed and broke, do not own anything, and do not need this added stress onto my problems. Please leave me alone.

Def Facts ¶ 50; McCabe Aff. Ex. N.  Parker asserts that she was responding to the order as mailed to her by the court, not by the mailing P&P sent.  Pl. Facts ¶ 50.  Because the order directed the "party in receipt" to mail it to all parties within seven days, however, it is unclear whether the court actually mailed the order itself.  McCabe Aff. Ex. M.

Before Ramoth served the levy on the bank in Bergen County, P&P directed him in a letter dated November 16, 2007 to return the writ to the firm "unsatisfied." Def. Facts ¶ 56; Ramoth Aff. ¶ 5, Ex. D.  Meanwhile, Parker forwarded to P&P a notice that she had received from Ramoth entitled "Execution Sale." Def. Facts ¶ 56, Pl. Facts ¶ 56; Ramoth Aff. Ex. E.  The document states Parker's purported amount due ($1,933.33), and advised that "unless you satisfy said execution forthwith, I shall be compelled to post three execution sale notices in your

14

neighborhood and hold sale of same as prescribed by law on all household goods, furniture, appliances, materials and all other assets." Ramoth Aff. Ex. E. Ramoth avers the following regarding the Execution Sale document:

> [It] is a letter of my own creation that is used in situations when I am unable to effectuate a levy. . . . I am not a paid employee [of defendants]. . . . Neither Palisades Collection, L.L.C. nor its counsel, [P&P] instructed me to send the 'Execution Sale' letter. I neither sent them a copy for their review nor do I recall sending a copy to them in any matter for their review.

Ramoth Aff. ¶ 7.

Parker disputes Ramoth's account that defendants had nothing to do with the document, on the basis that "when the defendants caused the *writ of execution* to be [issued], . . . it was [done] with forethought, malice[,] and purposes to afford [Ramoth] the opportunity . . . to threaten and harass [her]." Pl. Facts ¶ 59 (emphasis added). Ramoth never actually took steps to levy any of Parker's assets. Def. Facts ¶ 61, Pl. Facts ¶ 61.

Parker filed this action through counsel, who is her brother, on November 21, 2007 [D.E. # 1], and filed an application for a temporary restraining order against defendants on November 30, 2007 [D.E. # 4]. The Court denied the application [D.E. # 3], and Parker thereafter moved for entry of default against defendants on three occasions after defendants had filed an answer [D.E. # 14, 16, 18]. The Court denied each request, ultimately in a written opinion and order [D.E. # 23]. The case was reassigned to the undersigned on May 13, 2008 [D.E. # 28], and discovery closed on August 4, 2008. Parker then sought leave to amend her complaint, which Magistrate Judge Patty Shwartz denied on September 26, 2008 [D.E. # 62]. This motion followed.

## IV.    DISCUSSION

As previously stated, Parker asserts four substantive counts in her complaint. The lynchpin of Parker's case is the FDCPA, which exists to provide a measure of protection for consumer debtors from abusive and harassing collection practices. At its core, Parker's complaint alleges that defendants violated 15 U.S.C. § 1692g, which requires that a debt collector provide in writing certain information regarding a debt (*e.g.*, the amount of the debt, the name of the creditor, and the consumer's right to dispute or request validation in writing within 30 days). 15 U.S.C. § 1692g(a). Section 1692g(b) provides in pertinent part:

> *Disputed debts.* If the consumer notifies the debt collector in writing within [30 days] that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. Collection activities and communications that do not otherwise violate this title may continue during the 30-day period referred to in subsection (a) unless the consumer has notified the debt collector in writing that the debt, or any portion of the debt, is disputed or that the consumer requests the name and address of the original creditor. . . .

15 U.S.C. § 1692g(b). Parker claims that defendants violated the statute by instituting the state action, claiming that she had timely requested validation in writing to Palisades within 30 days of receiving its initial debt notice letter. Compl. ¶¶ 50-53. Parker also alleges violations of other FDCPA provisions: 15 U.S.C. § 1692d, which prohibits the use of harassing, oppressive, and abusive techniques in connection with the collection of debts; 15 U.S.C. § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the

collection of debts; and 15 U.S.C. § 1692f, which prohibits the use of unfair or unconscionable means in connection with the collection of debts.[6] Compl. ¶¶ 53-54.

Parker next alleges legal and equitable fraud under state law, arguing that defendants "falsely and fraudulently swo[re] by affidavit and certification [in the state action] that Plaintiff did not dispute the alleged debt and that Plaintiff had been effectively served with notice of process." Compl. ¶¶ 20, 30. In essence, Parker asserts that defendants' affidavits to the Special Civil Part were knowingly false, made "with the intent to induce the plaintiff to forgo professional legal representation," and that as a result of her "reliance upon the defendants' unlawful misrepresentations, [she] was induced to and did enter an ineffective defense before the Special Civil Part," without the aid of counsel. *Id.* ¶¶ 21-39.

Finally, Parker asserts a claim for intentional infliction of emotional distress as a result of defendants' collection efforts. Specifically, Parker alleges that defendants "have acted to conspire to defraud and oppress multiple unsophisticated consumers in the State of New Jersey," and that their actions were "deliberately designed to harass, humiliate, bully and oppress unsophisticated consumers to induce them to forgo professional legal representation in litigation and to induce unsophisticated consumers to make payment of debts they did not incur." Compl. ¶¶ 41-42. With respect to this claim, she asserts that defendants submitted false affidavits to the Special Civil Part, causing the underlying default judgment against her. *Id.* ¶ 45. She alleges that these misrepresentations were "deliberately designed to abuse Special Civil Part procedure[s] in an effort to cower and intimidate Plaintiff into believing that [she] had no legal recourse except to pay the phantom debt," and that defendants' actions have caused her "lost

---

[6] 15 U.S.C. § 1692k provides a private right of action to any person with respect to whom a debt collector has violated the statute. 15 U.S.C. § 1692k(a).

17

sleep, . . . debilitating headaches and jitters, and [have] also caused [her] to become aggressive to family members and suicidal to herself." *Id.* ¶¶ 46-47.

### A. FDCPA Claim

#### 1. Statute of Limitations

Defendants first argue that Parker's claims under the FDCPA are time-barred. Defendants' Brief in Support of Motion for Summary Judgment ("Def. Br.") at 14. An action under the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). Parker's cause of action accrued on either the date the state action was filed, *see Naas v. Stolman,* 130 F.3d 892, 893 (9th Cir. 1997), or on the date that the complaint in the state action was served upon her, *see Johnson v. Riddle,* 305 F.3d 1107, 1113 (10th Cir. 2002).[7] *See also Schaffhauser v. Burton Neil & Assocs., P.C.*, No. 05-2075, 2008 U.S. Dist. LEXIS 24894, at *7 (M.D. Pa. Mar. 27, 2008). Accordingly, Parker's FDCPA claim accrued on either August 5, 2006 (when P&P filed the state action) or August 9, 2006 (when service was properly effected). Regardless of the proper accrual date, the applicable limitations period expired at least three months before Parker filed suit in this Court. Her complaint is therefore time-barred insofar as it asserts a cause of action based on the filing of the state action and any actions taken before that time.

---

[7] Parker also argues that the initial dunning letter sent by Palisades (which Parker received some time in early 2006) fraudulently alleges that the collection agency owned the AT&T debt owed by Parker. Pl. Opp. Br. at 11. Insofar as this could be interpreted as an independent claim under the FDCPA, it too is barred by the statute of limitations. *See Mattson v. U.S. West Commc'ns, Inc.*, 967 F.2d 259, 261 (8th Cir. 1992) ("The date on which [defendant] mailed the letters was its last opportunity to comply with the FDCPA, and the mailing of the letters, therefore, triggered [§] 1692k(d).").

Recognizing that the statute of limitations has lapsed, Parker argues that "[t]he common law doctrine of equitable tolling permits a court to bar the operation of a statute of limitation[s] when extraordinary circumstances make rigid adherence to that statute unfair." Plaintiff's Brief in Opposition to Motion for Summary Judgment ("Pl. Opp. Br.") at 10. Equitable tolling is an extraordinary remedy that permits a court—sparingly—to waive a statute of limitations "when a plaintiff has 'been prevented from filing in a timely manner due to sufficiently inequitable circumstances.'" *Santos v. United States,* 559 F.3d 189, 197 (3d Cir. 2009) (quoting *Seitzinger v. Reading Hosp. & Med. Ctr.,* 165 F.3d 236, 240 (3d Cir. 1999)). The doctrine will apply: "(1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* (internal citations omitted). The doctrine is not a substitute for "garden variety claim[s] of excusable neglect," *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96 (1990), and thus will not operate unless the plaintiff "exercised due diligence in pursuing and preserving her claim." *Santos*, 559 F.3d at 197 (citing *Irwin*, 498 U.S. at 96).

Parker has not met her heavy burden to rebut the presumption against equitable tolling. She argues:

> Where as [sic] in this case a Plaintiff sufficiently shows the court that the defendants have by deliberate ruse and artifice upon an unsophisticated consumer caused the statute of limitation[s] on a cause of action to expire, there arises a legitimate argument, as ever, to be made for the principles of equity to be applied to at least give the plaintiff an opportunity to litigate her cause. The statute of limitation[s] for bringing a cause of action under the FDCPA is one (1) year from the occurrence of the unlawful act. 15 U.S.C. § 1692k(d). However, courts are also conscious of the susceptibility of the statute of limitations[s] to abuse. See, Johnson v. Riddle, 305 F.3d 1107 (10th Cir. 2002) (stating that a likely

19

> scenario would be for a debt collector to delay service of process
> for a year to allow the statute of limitation[s] to "run out."

Pl. Opp. Br. at 10-11 (underline in original).  This is unsatisfactory.  Parker does not claim that she filed her action in the wrong forum, nor does she assert that some extraneous and extraordinary circumstance prevented her from timely filing this action.  Instead, she appears to argue that defendants have somehow hindered her from timely filing a complaint by constructing a "deliberate ruse and artifice" that caused the limitations period to run.  *Id.* at 10.  But Parker cannot obtain the benefit of the doctrine on such vague and conclusory allegations.  She does not state what it is that defendants did to mislead or otherwise prevent her from timely filing her complaint, nor does she submit any evidence that she diligently investigated, pursued, or attempted to preserve her claims in this Court.  Parker argues elsewhere in her opposition brief that: (1) P&P filed false affidavits in the Special Civil Part related to whether she had complied with discovery requests and whether she admitted the debt; and (2) P&P paralegal David Budd caused her to "repose upon her legal right to verification and caus[ed] the statute of limitation[s] on her FDCPA claims to run out."  *See* Pl. Opp. Br. at 11-12.  Her arguments, however, do not explain how these affidavits or her interaction with Budd prevented her from filing this lawsuit within one year of the date the state action was filed.  The allegedly false affidavits and claimed telephonic misrepresentations did not obscure Parker's ability to file this lawsuit, and she does not explain how the misrepresentations otherwise misled her into believing that she did not have a cause of action under the FDCPA.  At the time the alleged misrepresentations were made, the state action had been filed against her months before; her alleged validation request was sent before that.  Thus, a reasonably diligent investigation would have revealed that her FDCPA

cause of action had already accrued and that the clock was ticking, later misrepresentations notwithstanding.[8] Parker's unsupported arguments to the contrary are unpersuasive.

Parker cites *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002) in support of her argument. *Johnson* concerned whether a cause of action under the FDCPA—premised on an unlawful debt collection action—accrues on the date the action is filed or on the date that process is served upon the federal plaintiff. *Johnson*, 305 F.3d at 1113-15. Reasoning that a debt collector could effectively block an FDCPA action for all time by filing a debt collection suit, but refrain from serving the federal plaintiff for one year, the Tenth Circuit held that the action accrued on the date of service. *Id.* As this Court has already stated, however, whether Parker's cause of action accrued on the date the state action was filed or on the date service was completed is immaterial; either way the statute has run. *Johnson* did not, as Parker argues, imply that equitable tolling applies universally to the FDCPA merely because the statute is theoretically subject to abuse by an unscrupulous few.

Parker's references to *Baglione v. Clara Maass Medical Center, Inc.*, No. 99-4069, 2006 U.S. Dist. LEXIS 64251 (D.N.J. Sept. 8, 2006) and *Fahy v. Horn*, 240 F.3d 239, 244-45 (3d Cir. 2001), *cert. denied*, 534 U.S. 944 (2001) are similarly unpersuasive. Pl. Opp. Br. at 10. In *Baglione*—an action brought under 28 U.S.C. § 1983 and ERISA—this Court discussed the Third Circuit's concern "about the possible lack of fairness to litigants when the district courts proceed in a way that has 'potential adverse consequences' to the litigants." *Baglione*, 2006 U.S.

---

[8] The Court notes further that the particular alleged misrepresentations upon which Parker bases her equitable tolling argument themselves occurred before November 21, 2006. Therefore, any independent claims based on those statements are time-barred as well. The Court addresses below why these alleged misrepresentations cannot withstand summary judgment on the merits in any case.

Dist. LEXIS 64251, at *12-13 (quoting *United States v. Miller*, 197 F.3d 644, 649 (3d Cir. 1999)). It found that a prior administrative termination of the action had tolled the statute of limitations on plaintiff's time to reopen the case when certain ERISA plan appeals had been exhausted. *Id.* The case did not discuss *equitable* tolling, nor does it stand for the broad proposition that a statute of limitations may generally be tolled to thwart the harsh effects upon a time-barred litigant.

In *Fahy*—a *death penalty* case—the Court of Appeals for the Third Circuit equitably tolled the one-year statute of limitations for state habeas corpus petitions to permit federal review of a particular petitioner's otherwise untimely claim. The Third Circuit explicitly stated that "[i]n non-capital cases, attorney error, miscalculation, inadequate research, or other mistakes have not been found to rise to the 'extraordinary' circumstances required for equitable tolling." *Fahy*, 240 F.3d at 244 (citing *Freeman v. Page,* 208 F.3d 572 (7th Cir. 2000)). Because "death is different," however, the court tolled the statute of limitations to prevent the diligent petitioner's execution without affording his claims federal review. *Id.* (citing *Caldwell v. Mississippi,* 472 U.S. 320, 329 (1985)). *Fahy* is far afield from the present case—in fact and law.

Although "federal statutes of limitations are not jurisdictional" and are thus generally subject to equitable tolling, *Santos*, 559 F.3d at 195 (quoting *Irwin*, at 498 U.S. at 93-96), Congress's placement of the statute of limitations within the same subsection granting the Court subject matter jurisdiction over this case is further reason not to apply equitable tolling, all else being equal.[9] *See* 15 U.S.C. § 1692k(d); *cf. TRW Inc. v. Andrews*, 534 U.S. 19, 28-29 (2001)

---

[9] The Third Circuit has not addressed whether the FDCPA's statute of limitations is jurisdictional. The Eighth Circuit has found that the statute of limitations is indeed a

(discussing structure of Fair Credit Reporting Act in holding that discovery rule only applies to those actions specifically excepted from the statute's general limitations period). The Court finds that equitable tolling is not appropriate in this case. Consequently, Parker's action is time-barred insofar as it concerns the state action and any other unlawful acts alleged to have taken place before November 21, 2006.

Parker does not specifically argue in opposing the motion that defendants' conduct was a "continuing violation" of the FDCPA, nor does she argue that any of the allegedly false affidavits that defendants submitted in support of the state action give rise to an independent FDCPA violation.[10] To the extent that any of defendants' certifications concerned the existence of a debt, however, her claims would be meritless. The course of litigation is not, in itself, a "continuing violation" of the FDCPA. *Nutter v. Messerli & Kramer, P.A.,* 500 F. Supp. 2d 1219, 1223 (D. Minn. 2007); *Schaffhauser,* 2008 U.S. Dist. LEXIS 24894, at *7; *Joseph v. J.J. MacIntyre Co.,* 281 F. Supp. 2d 1156, 1160 (N.D. Cal. 2003); *Sierra v. Foster & Garbus,* 48 F. Supp. 2d 393, 395 (S.D.N.Y. 1999). For defendants' litigation conduct to be actionable, Parker must offer proof that any particular act taken was a violation of the FDCPA, independent of the

---

jurisdictional inquiry. *See Mattson,* 967 F.2d at 262. While some courts have relied on this holding and found that the FDCPA is therefore absolutely "not subject to waiver or tolling," *Zhang v. Haven-Scott Assocs.,* No. 95-2126, 1996 U.S. Dist. LEXIS 8738, at *34 (E.D. Pa. June 21, 1996), the Court does not decide the question here, concluding as it does that equitable tolling is inappropriate under the circumstances presented.

[10] Such affidavits include: (1) the February 22, 2007 notice to *pro se* party and notice of motion to suppress Parker's pleadings with prejudice, *see* McCabe Aff. Ex. G; (2) a May 18, 2007 affidavit submitted to the Special Civil Part certifying that service of the court's suppression order with prejudice had been effected, *see* De Heer Aff. Ex. L; and (3) the August 20, 2007 motion to enforce litigant's rights, *see* McCabe Aff. Ex. M. To the extent Parker claims that defendants misrepresented the facts in other documents, the Court discusses those arguments below.

act of filing suit. *Schaffhauser*, 2008 U.S. Dist. LEXIS 24894, at *8; *see also Nutter*, 500 F. Supp. 2d at 1223; *Sierra*, 48 F. Supp. 2d at 395. Furthermore, "[n]ew communications . . . concerning an old claim . . . d[o] not start a new period of limitations." *Campos v. Brooksbank*, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000) (quoting *Sierra*, 48 F. Supp. 2d at 395). Additionally, insofar as Parker claims P&P filed false affidavits in the Special Civil Part after November 21, 2006 that relate to the status of Parker's alleged debt, those claims relate back to the original filing of the state action, and are time-barred as well. For all the above reasons, the statute of limitations will not be equitably tolled. *See Nutter*, 500 F. Supp. 2d at 1223.

Finally, a practical matter that arises from the review of the factual and procedural background of this case bears noting. Again and again, Parker claims that she did not receive critical mailings. The facts demonstrate, however, that none was returned (except as "unclaimed") and there is no dispute that she lives at the address used by Palisades and P&P. Her claim as to some of the notices and correspondence and pleadings sent over time is that the Zip+4 format does not reflect a break in the numbers. The Court discusses below why it is hard-pressed to credit Parker's position, *see infra* at 28-29 & n.13. "Equitable tolling" means just that—relief from certain time requirements, grounded in equity. Parker is quick to ascribe malignant motivations in mounting her claims and explaining why she deserves the extraordinary remedy of equitable tolling, but she is both unconvincing and inconsistent in explaining how so much mail failed to reach her. Considerations of equity militate against tolling here.

### 2. Merits

#### a. 15 U.S.C. § 1692g

While the Court has concluded that Parker's FDCPA claim is time-barred, it notes alternatively that Parker has presented no evidence—save for her own *ipse dixit*—that she

requested, in writing, verification of the AT&T debt from Palisades or P&P within 30 days of receiving the initial dunning letter. She claims that upon receipt of the initial notice from Palisades that "she soon thereafter dispatched [it] back to Palisades Collection with a handwritten request for verification embossed upon it," Pl. Facts ¶ 6, but the record does not substantiate her claim. Parker cannot defeat the summary judgment motion by resting on simple allegations that she timely sent a written request for validation. *See Matsushita*, 475 U.S. at 586 n.11. The closest Parker comes to proving that she sent such a request is her apparently spontaneous remark to Maranda Felton on August 15, 2006, when she stated that "Palisades has sent me a letter and 4 months ago I responded saying that I dispute the validity of the debt, and now I get something from Court that I am being summoned?" McCabe Aff. Ex S. This evidence, though, is also insufficient to show that Parker complied with her threshold burden timely to request validation. The conversation occurred at least six months[11] after she received the initial dunning letter from Palisades. Parker asks this Court to hold that all a consumer is required to do to defeat summary judgment is call a debt collector after he or she has been sued (and long after being initially noticed of the debt) and assert that "I wrote you four months ago requesting validation of the debt." Such a holding, however, would write the 30-day written validation window completely out of the statute. *Cf. Graziano v. Harrison*, 950 F.2d 107, 111-12 (3d Cir. 1991) (holding that verification request under 15 U.S.C. § 1692g(a)(3) must be in writing, and stating that "there are strong reasons to prefer that a dispute of a debt collection be

---

[11] Despite Parker's claim in the conversation that she had written Palisades four months before, she avers in her supplemental statement of facts that she received the initial dunning letter from Palisades in ether January or February 2006. Pl. Supp. Facts ¶ 1. Defendants' fact statement corroborates this account. Def. Facts ¶ 5. Parker's inconsistency further shrinks the quantum of proof she advances in opposing defendants' motion.

in writing: [A] writing creates a lasting record of the fact that the debt has been disputed, and thus avoids a source of potential conflicts"). On this record, the Court finds that the core deficiency in Parker's proffered evidence undermines her claim under 15 U.S.C. § 1692g.

### b. 15 U.S.C. 1692e

To any extent Parker timely alleges that defendants violated 15 U.S.C. § 1692e, which prohibits the use of false, deceptive, or misleading representations in connection with the collection of debts, the record evidence plainly contradicts her account. A communication is deceptive for purposes of the FDCPA if "it can be reasonably read to have two or more different meanings, one of which is inaccurate," viewed from the perspective of the "least sophisticated consumer." *Campuzano-Burgos v. Midland Credit Mgmt.*, 550 F.3d 294, 298 (3d Cir. 2008) (quoting *Rosenau v. Unifund Corp.*, 539 F.3d 218, 222 (3d Cir. 2008)). Parker lists several varieties of "false and fraudulent statements" that offend § 1692e, but upon scrutiny, none holds water. Pl. Opp. Br. at 11-13. The Court addresses these arguments below.

Parker first asserts that the complaint filed in the state action falsely claimed that Parker owed the AT&T debt and that she was in default thereof. Pl. Opp. Br. at 11. But the Court is hard-pressed to understand how one could ever collect a debt by commencing litigation without alleging in a complaint that the consumer actually owes the debt. Parker has failed to demonstrate that anything in the complaint was false, and the Court will not impugn the judgment entered in the state action. *See Tagayun v. Citibank, N.A.*, No. 05-4302, 2006 U.S. Dist. LEXIS 38085, at *10-19 (D.N.J. June 9, 2006) (in FDCPA action, giving preclusive effect to underlying default judgment in state debt collection action). While Parker asserts that she never received the multiple filings that led to the default judgment (see *infra*), the Special Civil Part ultimately denied her motion to vacate the default judgment on the merits by rejecting the

26

information she ultimately did provide.  McCabe Aff. Ex. L.  Whether Parker actually owed the debt (or any part of it) is not the question presented; the state court has already resolved that issue.

Parker also complains that defendants falsely certified to the Special Civil Part that she had a bank account at Trustco Bank in Bergen County when it forwarded the writ of execution to the Special Civil Part.  Pl. Opp. Br. at 12.  Noticeably absent from the writ of execution, however, is any certification by defendants that Parker actually had an account at the bank.  As defendants indicate, it is not abnormal for a judgment creditor to query in such a writ whether the debtor has an account at a particular bank.  Def. Rep. Br. at 10.  Aside from the fact that no certification (let alone a false one) is contained in the writ of execution, Parker ignores the fact that Court Officer Ramoth returned the writ to P&P unexecuted at the firm's request.  Finally, the FDCPA "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs.*, 394 F.3d 530, 539 (7th Cir. 2005) (citing *Hyman v. Tate,* 362 F.3d 965, 968 (7th Cir.2004); 15 U.S.C. § 1592k(c).  Parker has proffered no evidence that, even if defendants filed a false certification (they did not), and even if the writ had been executed (it was not), defendants intentionally attempted to mislead the Special Civil Part.  Summary judgment is therefore appropriate as to this claim.[12]

---

[12] Likewise unavailing is Parker's similar argument that defendants falsely certified to the Special Civil Part in a wage execution application filed on May 6, 2008 (and served upon Parker) that she was employed by Cooper Square Realty. Pl. Opp. Br. at 12-13; De Heer Aff. Ex. Y. As defendants argue, the application does not contain any certification that Parker was actually employed by Cooper Square Realty, and nothing is otherwise misrepresentative about the application. Def. Rep. Br. at 10-11. While Parker emphasizes that she made clear in her

Parker next claims that when she spoke to P&P paralegal David Budd on August 15, 2006, he falsely informed her that it would take up to 120 days to verify the AT&T debt. Pl. Opp. Br. at 11. Precisely how this statement was false, Parker does not say. She does not object to the authenticity of the Parker-Budd conversation transcription. Even were a standalone claim based upon this alleged misrepresentation not time-barred, there is insufficient evidence before the Court that would permit a rational jury to find that anything that Budd said to Parker was misleading, false, or fraudulent. Budd's communication therefore does not violate § 1692e.

Parker next argues that "upon review of the case file [she] realized that the defendants . . . alleged that they had filed an assortment of pleadings upon her which plaintiff was certain she had not received," and that as a result of the computer-automated zip codes printed on P&P mailings to her, "pleadings and sub[]poenas mailed to [her] had been suspiciously misaddressed by the defendants." Pl. Opp. Br. at 12. Without identifying what it is that defendants did wrong, Parker cites a passage from her deposition in which she is not testifying. *Id.* This record citation is *not* evidence which supports a denial of summary judgment. *See* Pl. Opp. Br. at 12; De Heer Aff. Ex. C, at 510:20-511:9; *see also supra* note 4. Furthermore, the allegation that Parker did not receive the mailings from P&P is belied by the record and is rejected as a matter of law. New Jersey Court Rule 6:2-3(d)—governing service of process by mail in the Special Civil Part—explicitly states that "if the certified mail is returned to the court marked 'unclaimed' or 'refused,' service is effective provided that the ordinary mail has not been returned." N.J. Ct. R. 6:2-3(d)(4); *see also Ivy Hill Park, Section III, Inc. v. Abutidze*, 371 N.J. Super. 103, 113-14 (App. Div. 2004) (Hoens, J.) (affirming trial court determination that return of certified mail as

---

deposition that she had not been employed there for over two years, Pl. Opp. Br. at 13, the application was made months before that deposition testimony.

"unclaimed" and non-return of regular mail effected proper notice); *Calafat v. Kranz*, No. 05-754, 2007 U.S. Dist. LEXIS 14773, at *2 n.1 (D.N.J. Mar. 1, 2007) (stating that where certified mail was returned as "unclaimed," but regular mail was not returned, "[i]t . . . appears that [p]laintiff is either refusing service of certified mail . . . or has changed his address without informing the Court . . . ."). The Court rejects Parker's allegations that she did not receive any mailings from P&P (despite her several responses to the Special Civil Part) because the zip code was not hyphenated.[13] As a result, no evidence exists that defendants falsely certified to the Special Civil Part that Parker repeatedly failed to comply with her litigation obligations in the state action.[14]

Finally, Parker argues that defendants falsely certified to the Special Civil Part that she had not responded to the information subpoena (forwarded by P&P on June 12, 2007 via

---

[13] It is true that the United States Postal Service requires a hyphen between the fifth and sixth digits when using the "ZIP+4" format. *See* United States Postal Service, Frequently Asked Questions: Parts of a Zip Code, http://www.usps.com (last visited June 29, 2009) (attached hereto as Appendix A). Failure to hyphenate the ZIP+4 code, however, does not necessarily result in failed delivery attempt. Rather, "[i]mproper mailpieces may progress slower through the mail system and *may be returned* to sender *if* the United States Postal Service is unable to deliver the item." *Id.* (emphasis added). Because the certified mail sent to Parker's address was returned as "unclaimed," and regular mail was never returned, it strains credulity to argue that every unhyphenated mailpiece did not arrive at Parker's residence.

[14] The Court also rejects Parker's mail-related claim that defendants falsely certified to the Special Civil Part that a particular mailing had been sent on May 18, 2007, but that the "court record blatantly contradicted [such a certification because] the mailing date denoted by the corresponding mail meter mark on the proof of mailing" demonstrated that it had actually been postmarked on May 21, 2007. Pl. Opp. Br. at 12; De Heer Aff. Exs. L, M. Even were the Court to indulge the argument, it notes that May 18, 2007 was a Friday, and May 21, 2007 was the following Monday, and will take judicial notice that a package dropped in the mailbox on a Friday might not be postmarked until the following Monday. *See* Fed. R. Evid. 201. In any event, Parker has proffered absolutely no evidence that this was in any sense a misrepresentation in connection with the collection of a debt. 15 U.S.C. § 1692e.

certified and regular mail), which ultimately led to the entry of the order to enforce litigant's rights. Pl. Opp. Br. at 13. She submitted to P&P on November 14, 2007 a partially completed information subpoena that is dated June 28, 2007, and asserted to P&P (and now, to this Court) that she had filed it with the Special Civil Part as an attachment to her motion to vacate the default judgment. But she is at the same time asserting that because P&P's mailings to her did not contain a hyphen in the zip code, she did not receive the information subpoena that was sent to her address on June 12, 2007 (and that was later returned as "unclaimed"). McCabe Aff. Ex. I; Def. Facts. ¶ 41; Pl. Facts ¶ 41. How Parker could have completed and filed a form she never received remains unexplained. Regardless, the Special Civil Part denied her motion to vacate the default judgment on the merits because good cause had not been shown. McCabe Aff. Ex. L. While the Court must draw all reasonable inferences in Parker's favor at this juncture, the reasonable inference here is that the Special Civil Part did not have the completed information subpoena before it when it decided the motion to vacate the default judgment. Accordingly, whether defendants truthfully certified to the Special Civil Part in their motion to enforce litigant's rights that Parker had not responded to the information subpoena is not subject to reasonable debate.

### c.   15 U.S.C. §§ 1692d

Section 1692d prohibits "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d.[15] Section

---

[15] As stated in the fact section above, Parker's complaint also alleges violations of 15 U.S.C. § 1692f, which makes unlawful the use of "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Parker does not refer to this section in her opposition brief, however, and instead only relies on her argument that defendants' alleged actions were oppressive, harassing, and/or abusive. *See* Pl. Opp. Br. at 13-15. Reviewing the evidence

1692f makes unlawful the use of "unfair or unconscionable means to collect or attempt to collect any debt," and provides a non-exhaustive list of outlawed practices.   15 U.S.C. § 1692f. Repeating several of her arguments previously discussed (and asserting a few new ones as well), Parker argues that defendants committed the following unlawfully abusive acts:

- The issuance, upon defendants' motion, of the order to enforce litigant's rights for failure to answer the information subpoena, which "the court record indicated she had already sent to the defendants";

- The false certification filed in the Special Civil Part that Parker had a bank account in Bergen County, where she did not have and has never had an account;

- Court Officer Ramoth's issuance of the "Execution Sale" document, which threatened to seize her personal property;

- Defendants' initial issuance of the writ of execution; and

- Defendants' request for a wage execution order from the Special Civil Part that stated that she worked for Cooper Square Realty, when defendants should have known that she no longer worked there.

Pl. Opp. Br. at 13-15.  Parker claims that each of these acts was taken in an effort to harass and humiliate her.  *Id.*  But her first, second, fourth, and fifth claims of abusive conduct are recapitulations as to alleged misrepresentations contained in the particular documents, and the Court has already rejected them.  Furthermore, § 1692d patently does not bar a judgment creditor from using lawful means to collect on a judgment; this includes taking lawful steps to levy property, garnish wages, and file other proper collection tools.  Defendants lawfully obtained a

---

submitted, the Court can find no genuine dispute of fact that would permit a rational jury to find in favor of Parker on any extant § 1692f claims.

judgment in due course, and they were entitled to collect on it. Nothing in § 1692d prohibited their conduct.

Regarding Parker's third claim of abusive tactics, Court Officer Ramoth has attested that the "Execution Sale" document was a letter of his own creation, which he sent on his own, not because defendants told him to. Ramoth Aff. ¶ 7. Ramoth is not affiliated with defendants, and is not a party to this litigation. Inasmuch as the document in question was not authorized by the creditor and was apparently not intended to be acted upon, Ramoth's sending it to Parker appears to conflict with FDCPA's consumer-friendly provisions, including § 1692d. But Parker has submitted no evidence that defendants had anything to do with the Execution Sale document, and in a letter brief submitted in opposition to a motion for sanctions, she admits that Ramoth sent the document without "authority [from P&P] or jurisdiction" to do so. *See* D.E. # 61, at 1-2. Parker now claims only that Ramoth is "notoriously associated with defendants." Her unsupported allegation, however, is insufficient to implicate the named defendants here.

*****

Based on the evidence of record, and for the foregoing reasons, the Court grants defendants' motion for summary judgment on the FDCPA claim.

### 3. Fees

Defendants have also moved for attorney's fees under the FDCPA, which provides in relevant part that, "[o]n a finding by the court that an action under th[e statute] was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). As demonstrated above, some of Parker's arguments before this Court, as well her attorney's conduct, have been questionable to say the least. Specifically and not by limitation, plaintiff's

attorney repeatedly requested a clerk's entry of default at the outset of the case, some 1½ months after defendants had filed an answer. *See* D.E. # 10, 12, 14, 16, 18. Judge Chesler issued a written opinion denying the entry of default, and admonished counsel for involving the Court with such unnecessary motion practice [D.E. # 23]. Thereafter, on July 9, 2008, after appearing late to her deposition, Parker walked out of her deposition on her attorney's advice because he did not "like the way [defendants] operate." Williamson Aff. Ex. 4, at 4:1-5:3; 90:14-97:5. When Parker's deposition was continued the next week, her lawyer again instructed Parker to terminate the deposition because he believed the time limit on her deposition had expired. Williamson Aff. Ex. 6, at 417:9-418:21. Magistrate Judge Shwartz intervened, and ultimately determined that Parker's time had not lapsed. De Heer Aff. Ex. C, at 417:9-484:25. In doing so, Judge Shwartz admonished Parker's attorney for making a practice of walking out of a deposition. *Id.* at 453:17-456:18.[16] Finally, in response to the present motion, plaintiff's attorney submitted untimely and piecemeal opposition papers on more than one occasion. *See* D.E. # 64-79].

The foregoing litigation conduct of plaintiff's attorney may have been strategic or prompted by the family connection between the two. In any event, it was litigation conduct subject to regulation by the rules of procedure and of the Court, and was in fact admonished more than once by the judge handling the case. The fee request here is made under the statute, which permits an award of fees payable by the consumer "upon a finding . . . that an action under [the FDCPA] was brought in bad faith and for the purpose of harassment . . . ." 15 U.S.C. §

---

[16] Without reproducing Parker's entire three-day deposition here, the Court notes further that her lawyer's conduct fell short of the civility that this district imposes on attorneys appearing before it. *See* L. Civ. R. 103.1 (adopting American Bar Association's Guidelines for Litigation Conduct, which "encourage, civility, courtesy, and professionalism among the bench and bar.").

33

1692k(a)(3). Neither situation is present here, let alone both. In light of the remedial purpose of the FDCPA, the Court construes this provision narrowly; as a practical matter it appears designed to thwart efforts of a consumer to abuse the statute and avoid responsibility to pay a legitimate debt. The evidence does not demonstrate that Parker instituted this suit with those purposes in mind, and statutory fees are therefore denied.[17]

### B. State Law Claims

Having disposed of the claim giving rise to its original jurisdiction, the Court declines to exercise supplemental jurisdiction over Parker's remaining state law claims. Those counts are therefore dismissed without prejudice to Parker's right to refile them in state court. *See* 28 U.S.C. § 1367(c)(3); *Queen City Pizza v. Domino's Pizza*, 124 F.3d 430, 445 (3d Cir. 1997) (whether to exercise supplemental jurisdiction after dismissing federal claims "is committed to the sound discretion of the district court.").

## V.   CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment on the FDCPA claim is granted. Parker's remaining state law claims are dismissed without prejudice, and the complaint is therefore dismissed. Defendants' motion for fees is denied. An order consistent with this opinion will issue forthwith.

/s/ Katharine S. Hayden

Hon. Katharine S. Hayden
United States District Judge

---

[17] Defendants also previously moved for sanctions against Parker's counsel under 28 U.S.C. § 1927 [D.E. # 57, 58], a cross-motion which arose from Parker's motion to amend the complaint. In an order dated September 24, 2008 [D.E. # 62], Magistrate Judge Shwartz denied both the motion to amend and the motion for sanctions [D.E. # 62].





HOME | CUSTOMER SERVICE | SIGN IN

Find a ZIP Code    Calculate Postage    Print a Shipping Label    Schedule a Pickup    Locate a Post Office    Track & Confirm

| BUSINESS » | HOUSEHOLD » | BUY STAMPS & SHOP » | ALL PRODUCTS & SERVICES » | ABOUT USPS & NEWS » |

# Frequently Asked Questions

Search Tips | Email Us | Call Us

**FAQ Home > Search Results for parts of a zip code**

### Search the USPS FAQs

Advanced Search

| parts of a zip code | Search > |

Tip: Use the word OR with many closely related terms. For example, crab OR lobster OR shrimp will find content with any of these words.

( < Back )

Printer-Friendly Format »

## Parts of a ZIP Code

| What is **a ZIP Code**? | What do the **parts of a ZIP Code** mean? |
|---|---|
| What does ND mean when it appears in place **of the ZIP+4**? | Is the hyphen in a **ZIP+4 ZIP Code** number required? |

### What is a ZIP Code?

**ZIP** is an acronym that stands for "Zone Improvement Plan."

- **ZIP Code** numbers are extremely important in the processing and delivery **of** mail.
- Using the correct **ZIP+4 code** reduces the number **of** handlings and significantly decreases the potential for error and possibility **of** misdelivery.

Back to Top

### What do the parts of a ZIP Code mean?

The nine digits **of a ZIP+4 code** (e.g., **12345-6789**) may be grouped as follows: **[123] [45] [67] [89 ]**

- **[123]** : Sectional Center or Large City
- **[45]** : Post Office facility or Delivery Area
- **[ - ]** : The required "dash" or "hyphen" separates the first five digits from the last four digits; the +4
- **[67]** : Sector or Several Blocks
- **[89]** : Segment or One Side **of a** Street

Back to Top

### What does ND mean when it appears in place of the ZIP+4?

If ND appears in place **of the ZIP+4 Code**, the Postal Service has determined that the address provided is Non-Deliverable. The sender should verify the address with the intended recipient to assure delivery. The article may be mailed using the 5-digit **ZIP Code**, however, there is **a** high likelihood it will be undeliverable and returned to sender.

Back to Top

Yes, when using **a ZIP+4 code**, the **ZIP**+4 number must consist **of** five digits, **a** hyphen (or dash), and four digits.

Improper mailpieces may progress slower through the mail system and may be returned to sender if the United States Postal Service is unable to deliver the item.

Back to Top

---

**Survey: Did this answer your question?**

**Feedback**

◉ Yes - this fully addressed my question
◯ No - I will continue searching
◯ No - I would like to submit a follow-up question

[ Submit ]

**Back to top**

Copyright© 2009 USPS. All Rights Reserved.   No FEAR Act EEO Data   FOIA